v. Ferguson v. New York et al. Case number is 23-1315. Thank you. Mr. Lickmucker, you've reserved three minutes for rebuttal. Thank you. If it pleases the Court, essentially this distills down to one important matter. The defendants are basically looking for a new rule, and that rule is that in a criminal case, police officers can decide unilaterally to withhold evidence, to withhold a witness, and say that it was not relevant to anything that was being litigated. And that is the problem here. This evidence turned out to be extremely relevant. It was withheld. It was lied about. Originally there was a statement made. This is the video? The video and the—I'm forgetting the woman's name from the school. Logan Smith. Principal Logan Smith from the Golding-Maple School. By the fourth argument, I may have lost some of the names. But what is the admissible evidence that would be presented if this case went to trial, that these named defendants, Gildaya and Jaeger, knew about that video and knew about that witness? Well, first of all, Gildaya told the DA, DA Reagan, the ADA Reagan, who eventually tried the case and lost it, my client prevailed at the criminal trial, he told them that he believed that Gildaya viewed it. But there's another reason, and the reason is the collective knowledge doctrine, which has been discussed in Illinois v. Andreas. It's a United States Supreme Court case. And in that case they say the purpose—excuse me—provides for purpose of determining whether an arresting officer has probable cause to arrest. When law enforcement authorities are cooperating in an investigation, the knowledge of one is presumed shared by all. That's a pro-law enforcement holding, right, that says any one officer can support his probable cause finding with the knowledge of his colleagues, right? You're asking here that in a 1983 case where we have individual liability and personal involvement requirements, that we attribute to these named individuals knowledge that may have been gleaned by two other officers who were the first ones to go to the school, right? Let me point out a few things. First of all, it's a state claim for malicious prosecution. And under the state claim, it's not important that the specific officer knew, only that an officer knew. That's a claim against the city, the malicious prosecution state court claim, which wasn't addressed in any detail in the summary judgment decision in order by the judge below. So that's an important issue. Secondly— So the grand jury here indicted, and that creates a presumption that there was probable cause, right? But it's a rebuttable presumption. Okay, well— It's a tough rebuttal. Well, it's a presumption, and wasn't there substantial evidence of probable cause here, including the victim identifying Mr. Ferguson as the shooter on four occasions? Okay, well, let's talk about— I'm going to address that, Your Honor. I'm not avoiding the question. I will answer it. But they said that Reginald Evans originally described somebody correctly who turned out to be the real shooter, we believe, Marcus Ortiz, who in turn was murdered a couple of years later. He described him exactly. Horace Wheeling, who the judge found his statement given to El Padillo de Leon, a retired first-grade detective, had gotten a description specifically of Marcus Ortiz, and he identified Marcus Ortiz. And I would like to— The victim picked Mr. Ferguson out of a photo array describing him as the guy who shot me. After Mr. Ferguson is arrested and put in a lineup, the victim picks him out of the lineup. Why isn't that enough for probable cause? Oh, okay, the victim. Okay. Wheeling said no. Originally he gave a statement. I don't want to be redundant, but forgive me. I wasn't asking about Wheeling. I was asking about Evans. Yeah, you were. And Evans did say that was him after describing somebody. And then he did it again in the grand jury. He also testified. Why isn't that enough for probable cause? Well, it's rebuttable presumption, and his original description is entirely different. I know this case is on point about that, people changing their descriptions. But what's important here is that Wheeling describes Marcus Ortiz exactly. I was asking you about Evans once again. Yes, I agree with you. Is there any dispute that Evans picked Mr. Ferguson out as being the shooter three times, maybe, and again at trial? Eventually he did. Why isn't that enough for probable cause? Because— The victim picked out the shooter. Right.  But eventually—okay. After, again, I don't want to be redundant. I already said my other point. But— You're not being redundant because you haven't answered my question. It should be enough for probable cause. But, again, that is something that—let's understand also that Gildea had basically terrified two people who had refused to identify people. And after that, then Evans suddenly identifies somebody who looks completely different. So that's something that a jury should be able to decide whether or not it was the influence of Gildea's bad conduct. Also, that wouldn't be relevant to the fair trial issue. It wouldn't be relevant to it at all. The fact that there was evidence suppressed, a witness suppressed, is all that we need to go forward with the fair trial issue. And the other thing I would like to point out— Fair trial issue based on a Brady violation? Well— You could call it a Brady violation, but you don't have to. Well, failure to turn over exculpatory information? It's worse than that. It's suppressing and allowing evidence to be destroyed. Isn't there a case law that says when there's an acquittal, if the claim is based on Brady, that you don't have a claim of violation of fair trial? Because— There is. You won. There is. Yeah, there is. Based on Brady. But we didn't base it on Brady. You know, we called it something completely different than— So what— Well, it's not what you call it. It's what it is. Is the claim based on the suppression of the video? The destruction of the video, the suppression of the witness who— Is it based on not turning over the video? Let's keep it simple. Whether it was destroyed, known, unknown, the claim is did not turn over the video, correct? We did not disclose it. That is correct. The video and the witness. And the witness was very important, and there were things that could have been determined from that video. Let's remember this man stayed in jail for three years and nine months. I think you've answered my question. Thank you. Okay. All right. Thank you. You've reserved some time for rebuttal. We'll hear now from Mr. Davies. May it please the court. My name is Jameson Davies for the FLEs. This court should affirm the district court's decision granting summary judgment to the defendants. The district court properly granted summary judgment because the initiation of this prosecution was supported by a probable cause, which is a complete defense. The grand jury's indictment created a presumption of probable cause, which Ferguson cannot rebut. And even setting that presumption to one side, the victim of the crime consistently identified him as a shooter in a photo array, at a lineup, at the grand jury, and at trial. And that's more than sufficient to support probable cause to initiate his prosecution. Nothing that's actually in the record undermines that conclusion. The district court also properly granted summary judgment on the fair trial claim. The fair trial claim is based on assertions of fabricators who withheld evidence. As Your Honor is pointing out, and as the plaintiffs never disputed, that claim cannot proceed where he was acquitted at trial, because it's based on what the likely effects would have been of the withheld evidence at trial, nor he's acquitted. There was no negative effect. There's no causal connection between any withholding of any evidence and a fair trial claim. He just rehashes the arguments in support of his militia prosecution claim, and those arguments fail for the reasons we mentioned. I'd like to just mention a couple things in response to the arguments. First, as to the collective knowledge doctrine, as Your Honors are pointing out— I'm going to just ask you to slow down just a little bit. That's okay. Sorry. As to the collective knowledge doctrine, there's nothing to support using that in this 1983 case. That's an issue of whether you have probable cause to arrest. And there's nothing—also, that's a completely new argument for the first time in this oral argument. It's not in any of the briefing below or in the appeal. As to the point about Wheeling identifying Ortiz, that was in the private investigator report, which, as Judge Italiano explained, was completely hearsay. The plaintiff has never made any arguments as to why that report would have been admissible. He's never even responded to the judge's findings that that was hearsay. And so, regardless, it's inadmissible. But even so, Wheeling's identification was never presented to the grand jury. The grand jury only heard from Evans, who's the victim of the crime. So there's no way that, you know, whatever he said was irrelevant to the grand jury's determination that there was probable cause to issue the indictment. And then he also said—counsel mentioned that—or argued that Gilbey had terrified two other witnesses. There's just nothing in the record to support that. There's testimony from one witness that he spoke to him, and they had an alibi. He doesn't make any statement that he was coerced into any identification. He didn't actually even make an identification. He said he wasn't there. So there's just nothing to support, in the record, to support any claim that there was any coercion or any improper conduct in the investigation that caused any misidentification of the shooter. Unless the court has any other questions, we urge this court to affirm. Thank you, Your Honors. Thank you. Thank you. Mr. Lichtmacher, you have an additional three minutes. I'd like to thank you for pronouncing my name correctly. I'm glad I got it right. It's very rare. With all due respect to my adversary, he was wrong about one thing. Only one thing? I think more than one thing, but I would address one thing that he was clearly wrong about. There is evidence that McCummings, and it's in the record that we presented, that McCummings was handcuffed, left for seven hours, not allowed to go to the bathroom for seven hours, and tried to be coerced into giving a false statement, number one. Number two, and I think we should look at Wheeling's statement, and it's a possibility that it is admissible due to the residual, the hearsay residual. I think it's 807. When there is indicia that something is correct that comes in that otherwise would be hearsay, and it's not otherwise possibly being presented, in that case under 807, and it's rarely used. I understand that. Under 807, the testimony of Wheeling could come in. Now, Wheeling was told. But Wheeling, I thought Wheeling asserted his Fifth Amendment privilege when some of these issues came up. So it doesn't sound like he would be available to testify. So are you saying we would then substitute the private investigator's statement?  El Padillo de Leon, first-grade retired detective, is saying exactly the description, and, in fact, he identified Marcus Ortiz, which is exactly the same description that was given by Reginald Evans. And, by the way, this is important. They didn't make a DD-5 about Reginald Evans' original statement. A lot of things are missing in this case. There's interviews of Wheeling where they don't get a description. I've never heard of that before. I do a lot of these cases. They interviewed Wheeling on the street. He said he saw the guy. They didn't ask for a description. Two cops did, Gildaya and Vargas, Antonio Vargas. Neither one gets a description. That's bizarre. I mean, that just doesn't happen in these situations. The court's got to look a little deeper at this. So there is a gap, though, right, between when things go sideways with an investigation, sometimes that leads, as it did here, to an acquittal, right? The jury heard all this and heard the problems with the evidence in the investigation and acquitted your client. But that's not a perfect overlap with the availability of a malicious prosecution claim, right? There has to be more there. It's not just the inadequacy. It's not just the success at trial. That is one element. But where do we find admissible evidence of their intentional falsification of evidence? I'm glad you asked. Okay. Gildaya says that the camera evidence would not be relevant. They say two different things about the camera evidence. One, well, it's not looking at the scene of the shooting, but it's looking exactly down the street. I think it's 56 Beach Channel, 56 Beach Street, where he was alleged to escape and where the man was seen running. It does show that. So Gildaya says, well, I didn't give it up because of that. There's no reason to mention it. There's no reason to document it because of that. But, in fact, it shows a very important part of the incident. He escaped, the man running away in the car. Okay. That's number one. Number two, they also tell the, well, let me use the word, they tell the lie that the camera was obstructed because there were things in the way from it. And there were not. And Logan Smith. And where is that claim reflected in the record? Logan's, yeah, it's in the record. It's in the record. They said it was obstructed. Logan Smith said it was absolutely not obstructed. She said there was a clear view. You could see the man running. You could see the car, which, by the way, was not the car that Gildaya knew that Ferguson drove. Ten minutes after the incident, they've got an eye on the car, you know, without a license plate, I believe, and they don't have an eye on, you know, who the alleged shooter is. They're not describing him. They talked to Wheeling, who saw the guy. They don't describe him. And Wheeling later on again, I know I'm repeating myself, describes the man as 5'9", 5'10", and lighter skin. I mean, there's some things here that are done intentionally to mislead people about what happened here. Okay, I think we have your argument, sir. Thank you both for your arguments. We will take that matter as well under advisement.